## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

WAYMAN W. TIMMONS,                      )
                                        )
                **Plaintiff,**              )
                                        )
vs.                                     )    **Case No. CIV-04-636-M**
                                        )
JO ANNE B. BARNHART,                    )
Commissioner, Social Security           )
Administration,                         )
                                        )
              **Defendant.**              )

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying his application for supplemental security income benefits. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). Both parties have briefed their respective positions, and the matter is at issue. For the reasons set forth herein, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On March 7, 1991, Plaintiff's mother applied for supplemental security income benefits on his behalf. Tr. 114-17. The Social Security Administration determined that Plaintiff was disabled beginning on March 1, 1991, and initiated the payment of benefits. Tr. 51-56. Pursuant to the continuing disability review process, Plaintiff, who had turned eighteen, received a notice of disability cessation on January 23, 2002. Tr. 74-77. The

communication notified Plaintiff that he was no longer disabled as of January 2002, and that his final benefits payment would be made in March 2002. Tr. 75.  This decision was affirmed on reconsideration before a disability hearing officer on August 6, 2002.  Tr. 81-83, 84-93.   Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on March 24, 2003.  Tr. 24-50, 96.  Plaintiff appeared in person and with counsel and offered testimony in support of his application.  Tr. 27-36. 26, Plaintiff's mother also testified on his behalf.  Tr. 36-40.  A vocational expert testified at the request of the administrative law judge. Tr. 40-49, 101.  The administrative law judge issued his decision on June 18, 2003, finding that Plaintiff was not disabled within the meaning of the Social Security Act and thus not entitled to supplemental security income benefits. Tr. 12-14, 15-21.  The Appeals Council denied Plaintiff's request for review on March 19, 2004, and thus the decision of the administrative law judge became the final decision of the Commissioner.  Tr. 6-8.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight.  However, we may

neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted).  The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 416.920.  Tr. 16.  He first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  Tr. 17, 20.  At step two the administrative law judge concluded that Plaintiff has mental retardation and asthma, impairments that are severe.  Tr. 18, 20.  At step three the administrative law judge concluded that these severe impairments did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Id.  At the fourth step of the sequential evaluation process the administrative law judge found that Plaintiff had no past relevant work.  Tr. 19, 21.  The administrative law judge concluded that Plaintiff had the residual functional capacity for light work with the following non-exertional impairments: a limited ability to read and write; a limitation for simple routine tasks; a limitation for infrequent public contact; and no exposure to

3

extreme temperatures.  Tr. 18, 21.  Based upon the testimony from the vocational expert, the administrative law judge found at step five that a person of Plaintiff's age with his educational background, work experience, and residual functional capacity could perform work as a silver wrapper and cafeteria worker, jobs that exist in significant numbers in the national economy.  Tr. 20, 21.  Thus, the administrative law judge found that Plaintiff was not disabled and was not entitled to supplemental security income benefits.  Tr. 20, 21.

**IV.     ISSUES ON APPEAL**

The Plaintiff raises three issues on appeal.  First, he contends that the step three analysis conducted by the administrative law judge was erroneous because his mental retardation combined with his asthma met the criteria of Listing 12.05(c), and therefore he should have been found to be disabled.  Plaintiff's Opening Brief, p. 8-10.  Plaintiff next argues that the administrative law judge erred in his analysis because he failed to perform a proper credibility analysis. Plaintiff's Opening Brief p. 10-12.  Finally, Plaintiff claims that the administrative law judge erred in relying on the testimony of the vocational expert because his testimony differed from the Dictionary of Occupational Titles without explanation for the discrepancy. Plaintiff's Opening Brief 12-14.

**V.     DISCUSSION**

**A.  Step Three**

Under the five step sequential analysis employed by the Commissioner, if a claimant establishes at step three that his impairment meets or equals a listed impairment, he will be found disabled, and eligible for benefits.  20 C.F.R. § 416.920(d).

After concluding that Plaintiff suffered from the severe impairments of mental retardation and asthma at step two, the administrative law judge concluded that these impairments were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  As an adult, claimant does not meet the listings for mental retardation." Tr. 18.  Plaintiff argues that he met both prongs of Listing 12.05(C) and accordingly was entitled to an award of benefits at step three of the analysis. The Commissioner failed to respond to this argument, even after Plaintiff pointed out this failure in his reply brief.

Listing 12.05(C) applies to claims of disability based on mental retardation.  This listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.05(C) (emphasis added). There is no dispute that on October 11, 2001, Plaintiff's verbal score on the Wechsler Intelligence Scale was 69, his performance score was 76 and his full-scale score was 70. Tr.  17, 348.  "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00(D)(6)(c).  Accordingly, Plaintiff met the first prong of listing 12.05(C).

Plaintiff argues that because the administrative law judge found at step two that his asthma was severe, that he has met the criteria for the second prong of Listing 12.05(C).  The Tenth Circuit has "held that where an [administrative law judge]

5

determines at step two that a claimant's impairment is severe, that impairment is a 'significant' limitation of work functions within the meaning of Listing 12.05(C). Hinkle v. Apfel, 132 F.3d 1349, 1352-53 (10th Cir. 1997)." Barnes v. Barnhart, No. 02-5153, 2004 WL 2681465, *1 (10th Cir. Nov. 26, 2004).[1] Additionally, as noted by the administrative law judge in Plaintiff's case, "[a] medically determinable impairment . . . is severe if it significantly limits an individual's physical or mental ability to do basic work activities (20 C.F.R. § 416.921)." Tr. 17. Additional impairments "need not be independently disabling to be significant under Listing 12.05(C). Barnes, 2004 WL at 2681465,* 1. Accordingly, the finding by the administrative law judge that Plaintiff's asthma was a severe impairment at step two was sufficient to fulfill Plaintiff's burden under the second prong of Listing 12.05(C).

Although it would appear at this juncture that Plaintiff should prevail, Plaintiff fails to acknowledge the additional requirements imposed on a claimant by the 2000 amendments to Listing 12.05(C). A claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A) as amended by 65 Fed.Reg. 50746, 50776 (Aug. 21, 2000) (emphasis added). The introductory paragraph requires that a claimant establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Plaintiff does not argue that he met the diagnostic description

---

[1]This and any other unpublished decision cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

of this introductory paragraph.   Because Plaintiff bore the burden at step three of the sequential analysis, and he has failed to argue that he presented evidence of such, the undersigned concludes that the administrative law judge's decision was supported by substantial evidence.   Accordingly, Plaintiff is not entitled to relief on this basis.

**B.      Credibility Analysis**

After concluding that Plaintiff's impairments did not meet any listed impairments in Appendix 1, Subpart P, Regulation No. 4, Tr 18, the administrative law judge proceeded to step four of his analysis, which includes making a residual functional capacity assessment.   Id.

A claimant's residual functional capacity is defined as the maximum sustained work capability that  a claimant is still functionally capable of doing on a regular basis, despite his impairments.   20 C.F.R.  § 416.945(a)(1).   As is generally done in assessing Plaintiff's residual functional capacity, the administrative law judge considered the Plaintiff's credibility with regard to his limitations.   The standard for reviewing subjective complaints is well established, and under the teaching of Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987), the administrative law judge must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. Luna, 834 F.2d at 163-164.   The claimant's "testimony alone cannot establish a nonexertional impairment." Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495,

7

1499 (10th Cir. 1992).   However, "a lack of objective corroboration" cannot justify complete disregard of Plaintiff's allegations, but can affect the weight to be given to them. Luna, 834 F.2d at 165.

Plaintiff alleges the administrative law judge erred in his credibility assessment because he failed to include in Plaintiff's residual functional capacity a limitation that he would require substantial supervision.  Plaintiff notes that the administrative law judge made no mention of the issue of supervision in assessing his credibility.

Once the administrative law judge finds that a claimant has met the initial burden of showing impairments that can produce the type of symptoms alleged, he then must go on to consider the relevant objective and subjective evidence to determine whether he believes the claimant's assertions. Luna, 834 F.2d at 163. In making such an evaluation, the administrative law judge should weigh and evaluate a number of factors and link his findings to substantial evidence of record.  Kepler v. Chater, 68 F.3d 387, 390-91 ( 10th Cir. 1995).  Some of the factors that may be considered include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  Social Security Ruling 96-7p, 1996 WL 374186, at *3; 20 C.F.R. § 416.929. Credibility determinations are peculiarly the province of the fact finder and generally

such determinations will be entitled to considerable deference.  <u>Bean v. Chater</u>, 77 F.3d 1210, 1213 (10th Cir. 1995).  The Tenth Circuit has "not reduced credibility evaluations to formulaic expressions . . ."  <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2001).  "<u>Kepler</u> does not require a formalistic factor-by- factor recitation of the evidence.  So long as the [administrative law judge] sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of [<u>Kepler v. Chater</u>, 68 F.3d 387 ( 10th Cir. 1995)] are satisfied."  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 ( 10th Cir. 2000).  Indeed, many of the above factors are not relevant to the issue Plaintiff alleges was omitted, his need for supervision.

From the administrative law judge's findings it is apparent that he concluded that Plaintiff's testimony and his mother's testimony regarding the amount of supervision he required was not sufficient to include such a need as a non-exertional limitation.  Tr.  18.  Beyond the vague testimony of Plaintiff and his mother regarding the alleged need for additional supervision, there is no record support for the alleged limitation.

At the hearing the Plaintiff testified that he was able to care for his own personal needs.  Tr. 33.  He testified that he leaves the cooking to his mother.  <u>Id.</u>  During his short term employment as a stocker, Plaintiff testified that he sometimes needed help, depending on what area they wanted him to work in.  Tr. 31.  He testified that he helps around the house, and sometimes his mother has to show him what to do.  Tr. 33.  She has to sometimes check to make sure he is doing what he is supposed to.  Tr. 33-34.  Plaintiff's mother, Jennifer Timmons, testified that Plaintiff helps her around the house, and sometimes she has to watch to make sure he gets his task done.  Tr. 37.  She feels

comfortable permitting him to work in the kitchen alone for between thirty minutes and one hour before checking on him.  Tr. 37.  She further testified that when he worked as a stocker, his manager knew of his disability and "would help him and stuff."   Tr. 38.  The full extent of such help was never explained.  On cross-examination, the vocational expert testified that all of the jobs identified would be eliminated if the hypothetical individual required constant instruction from a supervisor.  Tr. 49.

In the October 24, 2001, Functional Capacity Assessment, Stephen Miller, Ph.D., opined that Plaintiff had no significant limitation in his ability to sustain an ordinary routine without special supervision.  Tr. 352.  Additionally, before the Disability Hearing Officer, Plaintiff testified that the reason he quit his job at the Dollar Store was that he had to work too late and he was still in school.  Tr. 85.  According to the testimony of Plaintiff's mother at that same hearing, he quit his other stocking job because he wanted to play basketball.  Tr. 86.

Neither the Plaintiff nor his mother presented anything more than vague testimony that Plaintiff needed special supervision to complete chores at home.  There was no evidence that Plaintiff needed additional supervision for the competition of simple routine tasks.  Although Plaintiff's counsel attempted to raise the issue by questioning the vocational expert regarding the need for additional supervision, the underlying factual basis for the question was lacking.  Additionally, the administrative law judge sufficiently set forth the facts upon which he relied in making his credibility assessment. He discussed the testimony regarding Plaintiff's education and his ability to work around the house.  Tr. 17-18.  Accordingly, the undersigned concludes that the administrative law judge did not err in his credibility analysis by failing to include a limitation in

Plaintiff's residual functional capacity regarding the need for special supervision when engaged in simple and routine tasks.  The administrative law judge's credibility analysis was supported by substantial evidence.

### C.   The Administrative Law Judge's Step Five Analysis

Plaintiff also argues that the administrative law judge erred in accepting the testimony of the vocational expert at step five, because the vocational expert's testimony contradicted the Dictionary of Occupational Titles without explanation, contrary to the requirements of Social Security Ruling 00-4p.  Plaintiff's Opening Brief p. 10-12.

The administrative law judge proceeded to step five after concluding that Plaintiff had no past relevant work.  At step five the Commissioner bears the burden of establishing that a claimant retains the ability to perform work that exists in the national economy.  See Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).  In making this determination the administrative law judge may rely on the services of a vocational expert.  20 C.F.R. § 416.966(e).  However, before an administrative law judge may rely on the vocational expert's testimony, he must comply with Social Security Ruling 00-4p, covering the use of vocational expert evidence in disability decisions.  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Social Security Ruling 00-4p explains that:

> [w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the [administrative law judge] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles].  In these situations, the adjudicator will: Ask the [vocational expert] . . . if the evidence he or she has provided conflicts with information provided in the [Dictionary of Occupational Titles]; and If the [vocational expert 's] . . . evidence appears to conflict with the [Dictionary of Occupational Titles], the [administrative law judge] will obtain a reasonable explanation for the apparent conflict.

Id. at * 4.

In this case, relying on the testimony of the vocational expert, the administrative law judge concluded that given his residual functional capacity, Plaintiff could work as a silver wrapper or a cafeteria attendant. These jobs were based, in part, on the conclusion that Plaintiff "would due (sic) well in jobs that require simple routine tasks, and infrequent public contact." Tr. 18. In his hypothetical question to the vocational expert, the administrative law judge included a limitation on the hypothetical individual that "he could understand and perform routine tasks, and follow simple instructions, but would have considerable difficulty with either complex or detailed instructions or tasks." Tr. 46. In response the vocational expert concluded that none of the jobs he had previously identified, which included silver wrapper and cafeteria attendant, would be eliminated by the additional limitation. Id.

Plaintiff contends that the jobs of silver wrapper and cafeteria attendant are not suitable for a person whose abilities are limited to simple routine tasks because they each have been assigned a reasoning level of 2 in the Dictionary of Occupational Titles. Accordingly, Plaintiff argues, the vocational expert should have explained the discrepancy between his testimony that Plaintiff could fulfill the obligations of those jobs given the limitations imposed by the administrative law judge. The Commissioner responds by arguing that the SVP levels of 1 and 2, assigned to the jobs of silver wrapper and cafeteria attendant, respectively, are appropriate for a person with Plaintiff's limitations.[2] Because the Social Security Administration has defined unskilled work as requiring simple duties and little judgment and because jobs with the SVP of 1 or 2 are

---

[2] SVP stands for specific vocational preparation and "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, Appendix C.

unskilled, the Commissioner argues that Plaintiff can necessarily fulfill the obligations of unskilled jobs, including silver wrapper and cafeteria worker.

According to the Dictionary of Occupational Titles the jobs of silver wrapper and cafeteria attendant are assigned a reasoning development level of two. <u>See</u> Dictionary of Occupational Titles 318.687-018, silver wrapper; 311.677-010, cafeteria attendant. Reasoning development level two requires "a commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, Appendix C. Plaintiff contends that such complexity is precluded by his limitation to simple and routine tasks, and that the vocational expert should have been required to explain the inconsistency between his testimony that a person with the limitations imposed by the administrative law judge could nevertheless fulfill the requirements of the identified jobs.

The undersigned recognizes that there is case law to support Plaintiff's contention. <u>See</u> <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997); <u>Allen v. Barnhart</u>, No. C-02-3315 EDL, 2003 WL 22159050 *10 (N.D. Cal. Aug. 28, 2003) ("The need to follow 'detailed' and 'involved' instructions exceeds the [administrative law judge's] limitation of plaintiff to 'simple, routine tasks.'"); <u>Cooper v. Barnhart</u>, No. 03-CV-665-J, 2004 WL 2381515 (N.D. Okla. Oct. 15, 2004) (finding that it was unclear whether the description of level two reasoning was consistent with a claimant being limited to simple and routine tasks). At least one judge in this Court has taken a position advocated by the Plaintiff here. <u>Ebert v. Barnhart</u>, No. CIV-03-1183-T, Report and Recommendation entered August 17, 2004

by United States Magistrate Judge Bana Roberts, adopted with no objection in an order entered September 15, 2004, by United States District Judge Ralph Thompson.

However, the undersigned finds the cases of <u>Hackett v. Barnhart</u>, 395 F.3d 1168 (10th Cir. 2005) and <u>Flaherty v. Halter</u>, 182 F.Supp.2d 824 (D. Minn 2001) to be more persuasive.  In <u>Hackett</u>, the claimant argued that her residual functional capacity as found by the administrative law judge which limited her to simple and routine work, was incompatible with jobs requiring a level three reasoning.  <u>Hackett</u>, 395 F.3d at 1176.  The Tenth Circuit Court of Appeals agreed finding that level two reasoning appeared more consistent with her residual functional capacity.  <u>Id.</u>  In <u>Flaherty</u>, the claimant argued that her residual functional capacity which limited her to simple, routine tasks was inconsistent with jobs requiring a level two reasoning requirement.  <u>Flaherty</u>, 182 F.Supp.2d at 850.  The Court rejected her argument, noting that while the Dictionary of Occupational Titles (DOT) definition for level two reasoning requires the understanding to carry out detailed instructions, it "specifically caveats that the instructions would be uninvolved – that is, not a high level of reasoning."  <u>Id.</u>  The Court found that the vocational expert's testimony did not contradict the limitations found by the administrative law judge, when considered in light of the DOT's definitions.  <u>Id.</u> at 850-51.  Based on these authorities, the undersigned finds that the vocational expert's testimony was not inconsistent with the DOT.

### <u>RECOMMENDATION</u>

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the decision of the

14

Commissioner should be affirmed.  The parties are advised of their right to file objections to this Report and Recommendation with the Clerk of this Court by April 19, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 30th day of March, 2005.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE